**GREER'S REFUSE SERVICE, INC., Plaintiff,**

**and**

**Donald E. Wilkes, Appellant,**

**v.**

**BROWNING–FERRIS INDUSTRIES OF DELAWARE, Browning–Ferris Industries of Florida, Defendants–Appellees.**

No. 87–3060.

United States Court of Appeals, Eleventh Circuit.

April 26, 1988.

Rehearing and Rehearing En Banc Denied June 6, 1988.

William H. Maness, Jacksonville, Fla., for appellant.

Dorothea Beane, Robert P. Storch, Asst. U.S. Attys., Jacksonville, Fla., for defendants-appellees.

Before TJOFLAT and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

In this case, the United States District Court for the Middle District of Florida, acting pursuant to its local rules, suspended attorney Donald E. Wilkes from further practice in the Middle District. We affirm.

## I.

Wilkes was admitted to the Florida Bar in 1950. Upon becoming a member of that bar, he was admitted to practice in the United States District Court for the Southern District of Florida. Subsequently, when the Middle District of Florida was created, he was admitted to practice in that district as well.[1] In 1953, he became a member of the New York Bar.

In 1960, Wilkes was disbarred in New York based on four charges of professional misconduct. *In re Wilkes,* 11 A.D.2d 35, 201 N.Y.S.2d 524 (1960).[2] In 1963, on the basis of the New York disbarment, the Florida Bar initiated its own disciplinary proceedings against Wilkes. The referee assigned to the matter recommended that Wilkes be permanently disbarred, or, in the alternative, suspended until such time as the New York disbarment was vacated. On review, the Supreme Court of Florida held that the referee had erroneously given undue weight to the New York disbarment and had failed to consider whether the record of the New York proceedings sup-

---

1. The Middle District of Florida was carved from the Southern District in 1962. Wilkes, as a member of the Southern District bar, was grandfathered into the bar for the Middle District.

2. The court's opinion listed three charges: "converting and misappropriating [a] client's funds, communicating directly with a party represented by counsel in an attempt to negotiate a settle-

ment, and misadvising and assisting a client to obtain a void Mexican divorce." *Wilkes,* 11 A.D. 2d at 35, 201 N.Y.S.2d at 524–25. The court also remarked that Wilkes had failed to appear in the disbarment proceeding and had apparently abandoned his law practice. We interpret this remark as referring to a fourth charge of professional misconduct.

ported the charges on which the disbarment was based. The supreme court therefore remanded the case to the referee, ordering him to conduct an independent examination of the record underlying the New York disbarment. *Florida Bar v. Wilkes*, 179 So.2d 193 (Fla.1965).

On remand, the referee gave independent consideration to the New York record and concluded that two of the four charges upon which Wilkes' disbarment had been based were not supported by the record.[3] In light of this conclusion, the referee rescinded his earlier recommendation that Wilkes be permanently disbarred and recommended that Wilkes instead be disbarred for a period of five years. The Supreme Court of Florida agreed with the referee's assessment of the New York disbarment record, but disagreed with the referee's recommendation regarding the appropriate sanction. Apparently believing that disbarment for five years was unduly harsh, the supreme court ordered that Wilkes be suspended from practice in Florida "until such time as he shall demonstrate to the Florida Bar and to this court that he has rehabilitated himself and that he should be reinstated to practice law in this state." *Florida Bar v. Wilkes*, 199 So.2d 472, 473 (Fla. 1967), *cert. denied*, 390 U.S. 983, 88 S.Ct. 1104, 19 L.Ed.2d 1280 (1968).

Wilkes has never sought reinstatement to the Florida Bar, and therefore remains suspended from the practice of law in Flor-

ida to this day. He refuses as a matter of principle to seek reinstatement to that bar; he believes that to do so would constitute a tacit admission of guilt as to the charges upon which the New York disbarment was based, and he is unwilling to make such an admission.

In September 1983, Wilkes appeared as counsel of record for a plaintiff in a case before the United States District Court for the Middle District of Florida. The defendants in the case moved the district court, pursuant to Local Rule 2.04(b),[4] to disqualify Wilkes from serving as plaintiff's counsel and to suspend Wilkes from further practice in the Middle District. After examining the two opinions of the Supreme Court of Florida relating to Wilkes' suspension in Florida, a three-judge panel of the district court granted the motion. On appeal, this court reversed. We held that the district court, before it could suspend Wilkes pursuant to Local Rule 2.04(b), was required "to give intrinsic consideration to the records underlying the state proceedings against Wilkes in New York and Florida." *Greer's Refuse Servs., Inc. v. Browning–Ferris Indus.*, 782 F.2d 918, 923 (11th Cir.1986).[5] In so holding, we relied on the principle enunciated in *Selling v. Radford*, 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585 (1917), and reaffirmed in *Theard v. United States*, 354 U.S. 278, 282, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957), and *In re*

---

3. The referee found that the third and fourth charges mentioned in the New York disbarment order, *see supra* note 2, were not supported by the record.

4. Local Rule 2.04(b) provides that "[w]henever it appears to the Court that any member of its bar ... has been disbarred or suspended from practice by the Supreme Court of Florida, or by any other Court of competent jurisdiction, ... such disbarment [or] suspension ... shall ... operate as an automatic suspension of such attorney's right to practice in this Court." The rule permits the attorney to file a petition with the district court seeking relief from the automatic suspension.

5. We noted in *Greer's* that Wilkes is recognized as a member in good standing of the federal bar for the Southern District of Florida. In 1971, Wilkes filed a "Motion to Confirm Credentials" in the United States District Court for the Southern District of Florida. The court denied the motion, basing its decision on the fact that

Wilkes had been suspended from the Florida Bar. On appeal, the Fifth Circuit reversed and remanded, ordering the district court to conduct an intrinsic examination of the records underlying the Florida suspension. *In re Wilkes*, 494 F.2d 472 (5th Cir.1974). On remand, the district court granted Wilkes' Motion to Confirm Credentials.

As we emphasized in *Greer's*, Wilkes' success in the Southern District has no bearing on the merits of the present case:

Every indication ... is that the order of the Southern District granting Wilkes' petition to confirm credentials applied only to that district. Indeed, it could not be otherwise; for, just as every court is entitled to determine its own bar membership in terms of admission, each may also determine its bar membership in terms of suspension or disbarment as well. *Greer's*, 782 F.2d at 923.

*Ruffalo,* 390 U.S. 544, 547, 88 S.Ct. 1222, 1224, 20 L.Ed.2d 117 (1968). In *Selling,* the Supreme Court held that a federal court may rely on a state court disbarment to exclude an attorney from practice before it

> unless, from an intrinsic consideration of the state record, one or all of the following conditions should appear: 1. That the state procedure, for want of notice or opportunity to be heard, was wanting in due process; 2, that there was such an infirmity of proof as to facts found to have established the want of fair private and professional character as to give rise to a clear conviction on our part that we could not, consistently with our duty, accept as final the conclusion on that subject; or 3, that some other grave reason existed which should convince us that to allow the natural consequences of the judgment to have their effect would conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained so to do.

*Selling,* 243 U.S. at 51, 37 S.Ct. at 379.

On remand, the district court examined the underlying records and concluded that neither the New York disbarment nor the Florida suspension was infirm under the *Selling* standard. Accordingly, the court reinstated its order suspending Wilkes from further practice in the Middle District. The district court commented that should Wilkes gain reinstatement to the Florida Bar, he would be entitled to apply for reinstatement to the federal bar for the Middle District.[6]

## II.

On appeal, Wilkes first argues that the review undertaken by the district court on remand was essentially a sham. He apparently contends that he is entitled, under our mandate in *Greer's,* to a trial *de novo* in the first instance on the question of his fitness to practice law. This argument reflects a basic misunderstanding of our mandate in *Greer's.*

■ Several preliminary points are in order. First, federal district courts have clear statutory authority to promulgate rules governing the admission and conduct of the attorneys who practice before them. *See Frazier v. Heebe,* —— U.S. ——, 107 S.Ct. 2607, 2611, 96 L.Ed.2d 577 (1987).[7] Second, the Middle District, pursuant to that authority, has promulgated rules providing that general admission to practice in that court is conditioned upon admission to the Florida Bar; these rules further provide that state disbarment may be grounds for suspension from the Middle District bar.[8] The Supreme Court has implicitly upheld the validity of rules such as those promulgated by the Middle District. *Greer's,* 782 F.2d at 921.[9] As we empha-

---

6. Local Rule 2.01(b) provides that "[o]nly those persons who are members in good standing of The Florida Bar shall be eligible for general admission to the bar of this Court." Local Rule 2.02 provides that, under specified conditions, a "non-resident attorney who is a member in good standing of the bar of any District Court of the United States, outside the State of Florida, may appear specially and be heard in any case in which he is counsel of record." Wilkes has not represented that he is a member in good standing of any United States district court bar outside the state of Florida.

7. 28 U.S.C. § 2071 (1982) provides that "all courts established by Act of Congress shall from time to time prescribe rules for the conduct of their business." 28 U.S.C. § 1654 (1982) provides that "[i]n all courts of the United States the parties may plead and conduct their own cases ... by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." Fed.R.Civ.P. 83

provides that "[e]ach district court by action of a majority of the judges thereof may from time to time, after giving appropriate public notice and an opportunity to comment, make and amend rules governing its practice not inconsistent with [the Federal Rules of Civil Procedure]."

8. *See supra* notes 4 and 6.

9. The Supreme Court does have the prerogative to "exercise its inherent supervisory power to ensure that these local Rules are consistent with 'the principles of right and justice.'" *Frazier v. Heebe,* —— U.S. ——, 107 S.Ct. 2607, 96 L.Ed.2d 557 (1987). In *Frazier,* the Court exercised its supervisory power to invalidate a local rule promulgated by the United States District Court for the Eastern District of Louisiana. The rule provided that members of the Louisiana Bar would not be admitted to the district court's bar unless they lived in, or maintained an office in,

sized in *Greer's*, a district court may suspend an attorney from its bar pursuant to a rule such as Local Rule 2.04(b) provided that an intrinsic consideration of the record underlying the predicate state disbarment does not reveal the kind of infirmities identified in *Selling*.

In this case, Wilkes had been admitted to practice in the Middle District based on his status as a member in good standing of the Florida Bar. The predicate of his suspension from practice in the Middle District was his suspension from the Florida Bar. That being the case, our mandate in *Greer's* directed the district court to give intrinsic consideration to the record underlying the Florida suspension and to determine whether that record revealed any of the infirmities identified in *Selling*. The obvious implication of our mandate was that if no such infirmities were uncovered, then it would be entirely permissible for the district court to use the Florida suspension as a predicate for its own suspension of Wilkes from practice in the Middle District. Only if the Florida suspension were found to be infirm under the *Selling* standard would the district court be required to make an independent determination whether Wilkes was fit to practice law.

Thus, contrary to Wilkes' apparent suggestions, our mandate in *Greer's* did *not* direct the district court to conduct a *de novo* trial in the first instance of Wilkes' fitness to practice law. The district court, in compliance with our mandate, examined the record underlying the Florida suspension. The court found none of the infirmities identified in *Selling*. Assuming that the court did not err in conducting its intrinsic consideration of the records, then, it was entirely proper for the court to reinstate its order suspending Wilkes on the basis of Local Rule 2.04(b). Furthermore,

it was entirely proper for the court to comment, consistent with its validly promulgated local rules, that Wilkes could be reinstated to the Middle District bar should he gain reinstatement to the Florida Bar.

Having disposed of Wilkes' argument that he was entitled to a trial *de novo* in the first instance on the question of his fitness to practice law, we turn to the merits of the district court's determination that the Florida suspension was not infirm on any of the bases identified in *Selling*. In making that determination, the district court gave intrinsic consideration not only to the record underlying the Florida suspension, but also to the record underlying the New York disbarment. Such review was necessary because, as explained above, the Florida suspension was itself predicated on the New York disbarment.[10]

Wilkes argues that the New York disbarment proceeding was constitutionally defective, and that the district court therefore erred in finding an absence of the kind of infirmity identified in *Selling*. One of the charges levied against Wilkes in the New York proceeding was that he had misappropriated and converted funds transmitted to him in escrow by an opposing lawyer. The record of the New York proceedings shows that Wilkes had notice of this charge and was given an opportunity to respond to it. The record also contains evidence that would support the conclusion that Wilkes had in fact engaged in the misconduct charged. The order disbarring Wilkes, however, referred to his having converted and misappropriated a "client's" funds, rather than funds transmitted to him in escrow by opposing counsel. *Wilkes*, 11 A.D.2d at 35, 201 N.Y.S.2d at 525. Owing to this discrepancy, Wilkes argues that he was denied due process because his disbarment was based on an unnoticed charge.

Louisiana. The Court emphasized, among other things, the irrationality of the rule as a means of ensuring the competence of the attorneys who practice before the district court. *Id.* at ——, 107 S.Ct. at 2612–13. Nothing in the *Frazier* opinion suggests that a local rule requiring state bar membership as a condition of general admission to a district court bar is an arbitrary or irrational means of ensuring attorney competence.

10. Because the Florida suspension was based on only the first two charges of professional misconduct involved in the New York disbarment, *see supra* note 3 and accompanying text, the district court properly limited its examination of the New York record to that portion pertaining to those two charges.

■ We find this argument to be without merit. The misappropriation charge stemmed from Wilkes' handling of a $600 check transmitted to him by an opposing counsel. A letter accompanying the check stated that "the proceeds of this check should be held by you in escrow pending receipt by me of a general release from your client to mine, and dismissal of the present action with prejudice to its renewal." No release was ever delivered by Wilkes, but he kept the money. Since the money was originally transmitted to Wilkes with the intention that it ultimately be paid to Wilkes' client, it is understandable that the New York court might make reference to the "client's funds" rather than "funds transmitted to Wilkes in escrow by opposing counsel." We recognize that the New York court's reference to a "client's funds" in describing the subject of the misappropriation was perhaps not the best choice of words. Wilkes cannot, however, seriously claim that he was tried on an unnoticed charge merely because the description of the charge in the court's formal opinion was not a model of clarity. The fact remains that Wilkes was charged with misappropriating the funds and had adequate notice of that charge. We therefore reject Wilkes' contention that his disbarment was based on an unnoticed charge.[11]

11. Wilkes claims that the New York disbarment and the Florida suspension were defective in several other respects. We conclude that these additional claims do not merit discussion.

12. In his brief, Wilkes repeatedly points out that his professional misconduct occurred some thirty years ago. Wilkes identifies this passage of time as a "grave reason," within the meaning of *Selling*, for not using the suspension from the Florida Bar as a predicate for suspension from practice in the Middle District.

In support of this argument, Wilkes relies on *Theard v. United States*, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957). In *Theard*, as in this case, an attorney was suspended from a federal district court bar on the basis of a state disbarment. The state disbarment order, entered in 1954, was based on an incident of misconduct that had occurred in 1935, at a time when the attorney was suffering from an extreme mental illness. *Id.* at 280, 77 S.Ct. at 1276. In light of these facts, the Supreme Court held that the district court had erred in auto-

## III.

In summary, we conclude that the district court's suspension of Wilkes pursuant to Local Rule 2.04(b) was proper in all respects. The district court correctly interpreted our mandate in *Greer's*, and we perceive no error in the court's finding that the records of the underlying disciplinary proceedings are devoid of the kind of infirmity identified in *Selling*.[12]

AFFIRMED.

matically accepting the state disbarment as a basis for suspending the attorney, and remanded the case for reconsideration. *Id.* at 283, 77 S.Ct. at 1277.

The present case does not involve the kind of special circumstances that gave rise to the Court's apparent concerns in *Theard*. In *Theard*, the predicate state disbarment itself occurred nearly twenty years after the misconduct in question. Here, the disciplinary proceedings that resulted in the New York disbarment were commenced within roughly one year of the misconduct in question, and the disciplinary proceedings that resulted in the Florida suspension were commenced within three years of the New York disbarment. Because the predicate state proceedings occurred in temporal proximity to the underlying misconduct, there is no danger here, as there was in *Theard*, that the disciplinary actions were based on stale evidence. Moreover, there is no suggestion in this case that Wilkes, like the attorney in *Theard*, was suffering from a debilitating mental illness at the time of the misconduct in question.