United States Court of Appeals,

Eleventh Circuit.

No. 95-4230

Non-Argument Calendar.

In the Matter of William A. CALVO, III, Petitioner.

July 24, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-09-ATTY) Norman C. Roettger, Jr., Chief Judge.

Before TJOFLAT, Chief Judge, and HATCHETT and CARNES, Circuit Judges.

PER CURIAM:

William A. Calvo, III, appeals the district court's order that disbarred him from practicing law in the Southern District of Florida. In disbarring Calvo, the district court relied upon the Florida Supreme Court's disbarment of him. That reliance was improper, Calvo contends, because the proceedings that resulted in his state court disbarment were constitutionally deficient. For the reasons discussed below, we affirm the district court's order.

I. BACKGROUND

In 1988, a federal district court granted the Securities and Exchange Commission's ("SEC") motion for an injunction prohibiting Calvo from violating the federal securities laws. *SEC v. Elec. Warehouse, Inc.,* 689 F.Supp. 53 (D.Conn.1988), *aff'd,* 891 F.2d 457 (2d Cir.1989), *cert. denied,* 496 U.S. 942, 110 S.Ct. 3228, 110 L.Ed.2d 674 (1990). The court found that Calvo had directly violated the Securities and Exchange Act of 1934 (the "Securities Act") and its related rules, and also that Calvo had aided and abetted others in violating the Securities Act and its rules. As

a result, the SEC suspended Calvo from appearing or practicing before it for two years. *In re Calvo,* SEC Admin.Proc. No. 3-7038.

Thereafter, the Florida Bar instituted disciplinary proceedings against Calvo, based upon his having committed securities fraud. An evidentiary hearing was held, after which the Florida Bar referee recommended that Calvo be disbarred. Calvo challenged that recommendation before the Florida Supreme Court on several grounds, all of which that court rejected; it ordered Calvo disbarred. *The Florida Bar v. Calvo,* 630 So.2d 548 (Fla.1993), *cert. denied,* --- U.S. ----, 115 S.Ct. 58, 130 L.Ed.2d 16 (1994). Calvo filed a petition for writ of certiorari in the United States Supreme Court, which was denied.

In 1994, the federal district court entered an order directing Calvo to show cause within thirty days "why the imposition of the identical discipline by this court would be unwarranted and the reasons therefor." In his response to that order, Calvo alleged numerous constitutional defects in the Florida state court proceedings, and requested an evidentiary hearing before the district court. Calvo attached several documents to his response, including: (1) a forty-six page "certified narrative" written by Calvo regarding the Florida proceedings, (2) copies of the briefs that both parties filed before the Florida Supreme Court, (3) a copy of the Florida Supreme Court's decision, (4) a copy of the SEC's decision, and (5) Calvo's motion for rehearing before the Florida Supreme Court. The district court declined to conduct a hearing, and, in 1995, pursuant to its local rules of disciplinary enforcement, ordered that Calvo be disbarred from practice before

it. *See* S.D.Fla. Rules Governing Attorney Discipline, Rule V.E. Calvo appeals that order.

## II. DISCUSSION

### A.

We must first decide whether we have jurisdiction over Calvo's appeal. The jurisdictional question focuses on whether there is a case or controversy under Article III of the United States Constitution. In supplemental briefs filed in this Court, both Calvo and the government contend that we have jurisdiction. We agree. Although neither the Supreme Court nor this Court has ever expressly held that we have jurisdiction over an appeal from a district court's disbarment order, there is an abundance of authority from the Supreme Court and this Court that strongly suggests that we do.

First, the Supreme Court explicitly has held that state court bar admissions and bar disciplinary decisions present "cases or controversies" under Article III. In *In re Summers,* 325 U.S. 561, 568, 65 S.Ct. 1307, 1312, 89 L.Ed. 1795 (1945), the Supreme Court held that it had jurisdiction to review a state supreme court's denial of admission to that state bar because that denial involved a case or controversy. The Court stated:

> Where relief is thus sought in a state court against the action of a committee, appointed to advise the court, and the court takes cognizance of the complaint without requiring the appearance of the committee or its members, we think the consideration of the petition by the Supreme Court, the body which has authority itself by its own act to give the relief sought, makes the proceeding adversary in the sense of a true case or controversy.

*Id.* at 567-68, 65 S.Ct. at 1311-12. The Court emphasized that "[t]he form of the proceeding is not significant. It is the nature

and effect which is controlling." *Id.* at 567, 65 S.Ct. at 1311.

Similarly, in *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), the Court held that a District of Columbia Court of Appeals order rejecting an application for admission to the District of Columbia bar was judicial in nature, thus making applicable the doctrine that bars federal district court review of state court decisions. The Court stated that "the proceedings before the District of Columbia Court of Appeals involved a "judicial inquiry' in which the court was called upon to investigate, declare, and enforce "liabilities as they [stood] on present or past facts and under laws supposed already to exist.' " *Id.* at 479, 103 S.Ct. at 1313 (alteration in original) (quoting *Prentis v. Atlantic Coast Line Co.,* 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908)); *cf. In re Palmisano,* 70 F.3d 483 (7th Cir.1995) (stating that *Feldman* "supplies the essential analysis" as to whether federal courts of appeals have jurisdiction over district court disciplinary actions).

*Summers* and *Feldman* are instructive in the present case, and inform us that bar admissions, bar disciplinary actions, and disbarments are essentially judicial in nature and thus present a case or controversy under Article III. *See Summers,* 325 U.S. at 566-67, 65 S.Ct. at 1311 (1945) ("A case arises, within the meaning of the Constitution, when any question respecting the Constitution, treatise or laws of the United States has assumed "such a form that the judicial power is capable of acting on it.' ").

It matters not that this case involves the disbarment of an

attorney instead of the denial of admission to a bar, or that this case involves a federal bar rather than a state bar. The district court's actions were as judicial in nature as those of the state supreme court in *Summers.* Prior to ordering Calvo disbarred, the district court judges met and considered Calvo's response to the order to show cause. The district court had before it Calvo's forty-six page description of the state court proceedings, various briefs and memoranda he had filed in the state court proceedings, a copy of the SEC's decision, a copy of the Florida Supreme Court's decision, and a copy of Calvo's petition for writ of certiorari to the United States Supreme Court.

That the district court did not conduct a hearing regarding Calvo's disbarment does not mean it lacked jurisdiction. *See, e.g., Summers,* 325 U.S. at 566-69, 65 S.Ct. at 1311-12 (assuming jurisdiction over appeal from denial of admission even though no hearing was held). Our jurisdictional inquiry concerns "the nature and effect" of the proceeding, rather than its form. *See id*. at 567, 65 S.Ct. at 1311. Because the "nature and effect" of the district court proceeding was to curtail Calvo's ability to practice law in the district court, and because we are capable of acting on Calvo's appeal, the district court's decision to disbar him is justiciable under Article III. *See, e.g., Ex Parte Burr,* 22 U.S. (9 Wheat.) 529, 530, 6 L.Ed. 152 (1824) ("the profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend on its exercise").

Second, in addition to the Supreme Court cases that explicitly hold that the Court has jurisdiction over appeals from *state* bar

admission and disciplinary decisions, the Supreme Court and this Court have reviewed *federal* court bar admission and disciplinary decisions on a number of occasions, which suggests that jurisdiction over these types of appeals is proper despite the lack of explicit holdings to that effect. In *In re Snyder,* 472 U.S. 634, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985), the Supreme Court reviewed an order of the Eighth Circuit Court of Appeals suspending an attorney for six months from practice in all courts of the Eighth Circuit. The Court reversed the disbarment order on the merits, stating that the facts, even as the district court understood them, did "not support a finding of contemptuous or contumacious conduct, or a finding that [the] lawyer is "not presently fit to practice law in the federal courts.' " *Id.* at 647, 105 S.Ct. at 2882. The Court did not specifically address the jurisdictional issue, and thus the case does not provide an explicit holding on that issue. Even so, the fact that the Supreme Court reviewed the order on the merits, without questioning its jurisdiction, strongly suggests that it believed its jurisdiction to be proper. *See also In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) (reversing disbarment from Sixth Circuit without discussion of jurisdiction); *Theard v. United States,* 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957) (remanding disbarment from federal district court without discussion of jurisdiction).

Similarly, this Court has reviewed numerous district court orders regarding bar disciplinary matters. In *Greer's Refuse Serv., Inc. v. Browning-Ferris Indus.,* 843 F.2d 443 (11th Cir.),

*cert. denied,* 488 U.S. 967, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988) ("*Wilkes III* "),[1] we affirmed the district court's suspension of an attorney from practicing before it. Although *Wilkes III,* like *Snyder,* did not explicitly address the jurisdictional question, our review of the merits in that case suggests that we believed our jurisdiction to be proper. *See also In re Finkelstein,* 901 F.2d 1560 (11th Cir.1990) (reversing the district court's order to suspend an attorney for six months from practicing in that district, without discussion of jurisdiction); *In re Dawson,* 609 F.2d 1139 (5th Cir.1980) (affirming the en banc order of the district court, which had suspended an attorney from practice before that district, without discussion of jurisdiction).

Two other courts of appeals recently have expressly held that jurisdiction exists to decide an appeal of a federal disbarment order. *In re Palmisano,* 70 F.3d 483, 484-85 (7th Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 1854, --- L.Ed.2d ---- (1996), and *In re Jacobs,* 44 F.3d 84, 87-88 (2d Cir.1994), *cert. denied,* --- U.S. ----, 116 S.Ct. 73, 133 L.Ed.2d 33 (1995), both presented cases almost identical to the present one. In those cases, the Seventh and Second Circuits, respectively, explicitly held that courts of appeals have jurisdiction over appeals of federal district court disbarment orders. *But see Brooks v. Laws,* 208 F.2d 18, 22-30 (D.C.Cir.1953) (holding that court of appeals lacks jurisdiction over appeal from district court disbarment order).

---

[1]*Wilkes III* was preceded by *In re Wilkes,* 494 F.2d 472 (5th Cir.1974) ("*Wilkes I* ") and *Greer's Refuse Serv., Inc. v. Browning-Ferris Indus.,* 782 F.2d 918, 920 (11th Cir.1986) ("*Wilkes II* "), *cert. denied,* 488 U.S. 967, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988).

These cases lead to one conclusion:  Calvo's appeal presents a justiciable "case or controversy."  The Second Circuit aptly summarized this jurisdictional issue in *In re Jacobs*—a case which raised issues identical to this case:

> The Supreme Court and circuit courts appear to have concluded that while regulation of attorney behavior should remain primarily within the discretion of each district court, it is contrary to fundamental notions of fairness to close off all avenues of review, even if only for the most glaring irregularities.

44 F.3d at 88.

### B.

Having held that this appeal is properly before us, we must decide whether the district court's order to disbar Calvo was proper.  The Supreme Court has held that "disbarment by federal courts does not automatically flow from disbarment by state courts."  *Theard v. United States,* 354 U.S. 278, 282, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957).  Even so, a state court disbarment should be accorded federal effect, unless it appears from an "intrinsic consideration" of the state record that:  (1) the state proceeding lacked due process;  (2) the proof in the state proceeding was so infirm "as to give rise to a clear conviction on our part that we could not, consistently with our duty, accept as final the conclusion" of the state court;  or (3) "some other grave reason existed which should convince us that to allow the natural consequences of the judgment to have their effect would conflict with the duty which rests upon us not to disbar except upon the conviction that, under principles of right and justice, we were constrained so to do."  *Selling v. Radford,* 243 U.S. 46, 51, 37 S.Ct. 377, 379, 61 L.Ed. 585 (1917);    *see also*

S.D.Fla. Rules Governing Attorney Discipline, Rule V.E. (requiring *Selling*-based analysis in disbarment actions).

The burden is on the disbarred attorney to show good cause why he should not be disbarred, and the district court is not required "to conduct a *de novo* trial in the first instance of [the attorney's] fitness to practice law." *Wilkes III,* 843 F.2d at 447. Instead, it must determine whether "the record underlying the predicate state disbarment ... reveal[s] the kind of infirmities identified in *Selling.*" *Id.* We review a district court's disbarment order only for abuse of discretion. *E.g., In re Gouiran,* 58 F.3d 54, 56 (2d Cir.1995) ("[W]e review the district court's order disbarring [an attorney] for clear abuse of discretion.").

In his response to the district court's order to show cause, Calvo raised several arguments concerning alleged defects in the Florida disbarment proceeding, including: (1) lack of notice that the charges could lead to disbarment; (2) lack of proof of misconduct because of (a) improper introduction of judgments of the SEC and the District Court for the District of Connecticut, (b) improper introduction of hearsay testimony, and (c) lack of credibility of witnesses; (3) deprivation of right to counsel; and (4) intervening change in the law.[2]

None of Calvo's arguments identify any of the three types of infirmities that *Selling* identified. The first prong of *Selling* concerns due process, which is narrowly defined, in this context,

---

[2]Calvo made several other arguments in his response, all of which we reject without further discussion.

as "want of notice or opportunity to be heard." *Selling,* 243 U.S. at 51, 37 S.Ct. at 379. Calvo's challenges to the state court proceeding, as argued in his response to the order to show cause, do not raise that type of concern. His only challenge that even remotely deals with the type of due process concerns that would fall under the first prong of *Selling* is his contention that he received inadequate notice of the Florida Bar's charges against him, because he was not informed in advance of the hearing that he might be disbarred. However, the published Florida Standards for Imposing Lawyer Sanctions, Standard 5.11(f), expressly state that disbarment is appropriate when "a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." Calvo certainly knew about his misconduct, which the SEC had found to be in direct violation of the Securities Act and its rules, before the hearing, and should have known about the Florida Standards. Accordingly, his due process contention is without merit.

Under the second prong of *Selling,* which concerns the sufficiency of the state court's proof, Calvo argues that the Florida proceedings suffered from an infirmity of proof because the referee permitted hearsay testimony, considered the judgments in the SEC actions, and allowed the testimony of witnesses who lacked credibility. Disbarment proceedings are not criminal proceedings, and relaxed rules of evidence apply. For example, in *The Florida Bar v. Vannier,* 498 So.2d 896, 898 (Fla.1986), the Florida Supreme Court held that, "[i]n bar discipline cases, hearsay is admissible

and there is no right to confront witnesses face to face. The referee is not barred by technical rules of evidence." We cannot say that the district court erred in finding that there was such a lack of proof in the state disbarment proceeding as to bar the federal court from giving federal effect to the state court's order.

Under the third prong of *Selling,* which considers whether disbarment is improper "under the principles of right and justice," Calvo makes several contentions. First, he contends that he was deprived of counsel at the disbarment hearing, and that that constitutes the type of "grave reason" that should have convinced the district court not to follow the state court's conclusion. Calvo argues that he was deprived of his right to counsel because the Florida Bar referee disqualified one of his attorneys, after that attorney was designated as a potential rebuttal witness for the Florida Bar. Even if true, that allegation does not amount to the type of grave injustice to which the third prong of *Selling* refers. Calvo concedes that he was represented by another attorney; he was not without counsel at the hearing. And even if he had not been represented, Calvo fails to demonstrate that he had a right to counsel at the hearing. *See, e.g., Lassiter v. Dep't of Social Servs.,* 452 U.S. 18, 25, 101 S.Ct. 2153, 2158, 68 L.Ed.2d 640 (1981) (stating that right to appointed counsel "has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation").

Second, Calvo contends that the district court should not have followed Florida's disbarment order, because there was an

intervening change in the law regarding securities fraud, which came after Florida disbarred Calvo and before the district court disbarred him. He argues that the Supreme Court's decision in *Cent. Bank v. First Interstate Bank,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), eradicated the predicate liability on which his Florida disbarment was based, because that decision held that the Securities Act would not support a private civil lawsuit for aiding and abetting. Be that as it may, Calvo still violated the Securities Act, as the SEC held. Moreover, the district court's disbarment order was based upon its overall conclusion that Calvo had "engag[ed] in conduct that adversely reflect[ed] on his fitness to practice law," Fla.Disciplinary Rule 1-102(A)(6). Neither that standard, nor disbarment generally, requires that the attorney have committed an act subjecting him to civil or criminal liability.

## III. CONCLUSION

We conclude that this appeal is justiciable because the district court's disbarment order constitutes a case or controversy under Article III. Although "disbarment by federal courts does not automatically flow from disbarment by state courts," *Theard,* 354 U.S. at 282, 77 S.Ct. at 1276, Calvo has failed to convince us that the district court should not have given federal effect to the state court's disbarment order. Accordingly, we AFFIRM the district court's order.