IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-46
_____

IN RE: ALTO V. WATSON, III

Petitioner
_____

October 4, 2000

Before KING, Chief Judge, and DAVIS and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

This is a reciprocal discipline proceeding against attorney Alto V. Watson, III.  It arises from action taken by the Texas Board of Disciplinary Appeals (BODA), which in September 1999 revoked Mr. Watson's term of probation and suspended him from the practice of law for five years.

Mr. Watson, a lawyer from Beaumont, had entered an Agreed Judgment of Fully Probated Suspension in March 1995.  He had been charged with failing to hold settlement funds, belonging in whole or in part to clients and third parties, separate from his own property, and with failing to notify third parties promptly about the receipt of funds in which the third parties had an interest.

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

As a result of the Agreed Judgment, Mr. Watson was placed on probation for five years.  During his probation, Mr. Watson was required to comply with the provisions of the Texas Disciplinary Rules of Professional Conduct and not to commit any act of professional misconduct, and was prohibited from having access to client funds and from having a legal business banking account, "for instance, but not limited to, IOLTA, client trust account, etc."

In August 1999, the Texas Commission for Lawyer Discipline (Commission) filed a motion with the BODA to revoke Mr. Watson's probation for various alleged violations of its terms.  In September, after a hearing at which Mr. Watson was represented by counsel, BODA revoked Mr. Watson's probation and suspended him for the full five years, without credit for any prior time spent on probation.

BODA found by a preponderance of evidence that after the date of the Agreed Judgment putting him on probation, Mr. Watson retained in an IOLTA trust account a portion of settlement proceeds he had received before being placed on probation.  These funds were either client funds or third-party funds, and Mr. Watson had no interest in or claim against them.  BODA found that Watson withdrew some of the funds and deposited them in his personal bank account, thus commingling them with his personal funds.  BODA also found that Mr. Watson spent a portion of the funds for "personal" purposes without the authorization of either

the client or the third party who had a claim to the funds, but that he later "replaced some portion of the settlement funds expended for reasons personal to Respondent and which were required to be held in trust when he received a Christmas bonus payment from his employer."

BODA concluded that Mr. Watson violated Texas Disciplinary Rules of Professional Conduct Rule 1.14 (lawyer must hold client/third party property separate from his own), Rule 8.04(a)(3) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation), and Rule 8.04(a)(7)(lawyer shall not violate any disciplinary or disability order or judgment). BODA also concluded that Mr. Watson violated the Agreed Judgment by having a legal business banking account, having access to client funds, and by committing acts of professional misconduct.

The Supreme Court of Texas affirmed the revocation and suspension on January 7, 2000. Watson moved for rehearing with the Supreme Court and also moved for a remand to BODA for development of a record about whether a BODA panel member should have been disqualified on conflict of interest grounds. The Supreme Court of Texas issued a letter ruling on May 11, 2000 denying both motions.

As a result of BODA's order of suspension, this court issued an order to Mr. Watson to show cause within 30 days why he should

not be suspended from practice as a member of this court's bar. Mr. Watson responded and requested a hearing.[1]

Attorney discipline by a circuit court is governed by Federal Rule of Appellate Procedure Rule 46, which states that a member of the federal appellate court's bar is subject to suspension or disbarment by the court if the member has been suspended or disbarred from practice in any other court. The member must be given an opportunity to show cause why the member should not be disciplined, and the member must be given a hearing, if requested. Fed. R. App. P. Rule 46(b)(2) and (3).

A hearing was held before a three-judge panel of the court on October 3, 2000. Mr. Watson appeared pro se.

The sole issue before this court is whether the Texas revocation of probation and suspension of Mr. Watson from the practice of law for five years supports the imposition of reciprocal discipline by this court.

Mr. Watson has the burden of showing why this court should not impose reciprocal discipline. Matter of Calvo, 88 F.3d 962, 966 (11th Cir. 1996). Mr. Watson correctly points out that discipline imposed by federal courts does not automatically flow from discipline in state courts. Theard v. United States, 354

---

[1] In addition to the written response to the order to show cause, Mr. Watson filed an Additional Brief to the Court's Order to Show Cause, a Motion to Expand Brief Page Limitation, and a Motion to Supplement the Record. The court grants the first of these motions, but notes that in all, Mr. Watson's responses to the show cause order exceed seventy pages. The court denies the motion to supplement the record.

U.S. 278, 282 (1957).  The Court has held, however, that a federal court should recognize, and give effect to, the "condition created by the judgment of the state court unless, from an intrinsic consideration of the state record," it appears that:

> (1) that the state proceeding was wanting in due process;
>
> (2) that the proof of facts relied on by the state court to establish want of fair character was so infirm as to give rise to a clear conviction on the federal court's part that it could not, consistent with its duty, accept the state court's conclusion as final; or
>
> (3) that to do so would, for some other grave and sufficient reason, conflict with the court's duty not to disbar except upon the conviction that, under the principles or right and justice, it is constrained to do so.

Selling v. Radford, 243 U.S. 46, 51 (1917).[2]  The Selling analysis continues to be the guiding standard by which federal courts determine whether they will impose reciprocal discipline

---

[2] Mr. Watson was ordered by this court to provide a certified copy of the record of the state disciplinary proceeding.  The clerk of the Supreme Court of Texas advised this court and Mr. Watson that it was unable to locate the entire record, but that it believed that the State Bar of Texas had a copy of the entire record.

Mr. Watson was then directed to file the partial record from the Supreme Court of Texas, and to file whatever portions of the record he had available.  He was further directed to make reasonable efforts to obtain from the State Bar of Texas any documents still missing, and to provide a list of all documents missing from the record he provided to this court.

Mr. Watson filed a copies of the charge, briefs, discovery requests and responses, motions, correspondence with the BODA and between counsel, the hearing transcript and exhibits, and BODA's Judgment and Findings of Fact and Conclusions of Law.  He did not indicate that any documents were missing, or that what he filed with this court did not constitute a complete copy of the record.

based on a state court proceeding and has been expressly employed by the Fifth Circuit.  In re Wilkes, 494 F.2d 472, 476-77 (5th Cir. 1974);  In re Dawson, 609 F.2d 1139, 1142 (5th Cir. 1980).

In his briefs and at the hearing, Mr. Watson argued that the Fifth Circuit should not impose reciprocal discipline based on the state court order for the following reasons:

(1) The state court proceeding denied him due process because one of the BODA panel members had a conflict of interest; Mr. Watson did not have sufficient notice of the charges; evidence used against him was not produced until the final moments of the hearing; and the standard of proof was insufficient;

(2) There was insufficient evidence of misconduct to support revocation of probation; and

(3) Grave injustice would result from the imposition of reciprocal discipline because one of the BODA panel members had a conflict of interest; the terms of probation were ambiguous; the misconduct complaint was the result of a personal vendetta against Mr. Watson by his prior law firm; and suspension is too severe a punishment for the alleged misconduct.

We discuss Mr. Watson's arguments in turn, noting that some of his contentions implicate more than one of the Selling criteria.


Composition of the BODA Panel

Mr. Watson argues that BODA panel member Alexander J. Gonzales should have been disqualified from participating in his case, and that his participation invalidated the decision of the entire panel.  Gonzales is a member of the firm of Hughes & Luce, which lists Wal-Mart Stores, Inc. as one of its clients in the

Texas Legal Directory.  Prior to his suspension, Mr. Watson and others  represented plaintiffs in Meissner, et ux v. Wal-Mart Stores, Inc., et al., a state court action in which Wal-Mart was threatened with a sanction of $18,000,000 for discovery abuses.[3] Hughes & Luce did not represent Wal-Mart in the Meissner case.

Mr. Watson asserts that Wal-Mart has a "tremendous and very personal hostility towards Watson."  He filed with the Supreme Court of Texas, along with his motion for remand, a copy of a memo which he represents to be from Wal-Mart to its "flat-fee attorneys" stating it had retained an attorney "to see if there is anything we can do in regard to the plaintiff's attorney . . . ."  Watson concludes that Hughes & Luce "had a tremendous motivation to destroy Mr. Watson's continued ability to represent the Plaintiffs in Meissner, at the very time that Mr. Gonzales was deciding Watson's case."  Mr. Watson asserts that "'Judge' Alex Gonzales had an ethical duty to be biased against Watson in favor of his client, Wal-Mart," and that even the appearance of a potential conflict of interest obligated Gonzales to recuse himself.

Mr. Watson's filings offer no evidence of the type of personal bias that would  raise concern about Mr. Gonzales' impartiality in this case.  The mere fact that Hughes & Luce has a client who may harbor an animus against Mr. Watson, arising

---

[3] Mr. Watson included in his filing with this court numerous news articles discussing the sanction against Wal-Mart obtained in the Meissner case.

from a case in which that firm was not involved, does not mean that the members of the firm share that animus. Moreover, the suggestion that Hughes & Luce (and therefore Gonzales) might benefit financially from a decision to suspend Watson is far too tenuous.

We are mindful that the Supreme Court of Texas denied Mr. Watson's motion for remand on this very issue, and that Selling sets the standard for our deliberations on this matter. The Supreme Court of Texas has implicitly concluded that there is no showing of actual bias, and that Mr. Watson's allegations are not sufficient to cause an objective, disinterested observer to entertain a significant doubt about Mr. Gonzales' impartiality. We see no reason to believe that conclusion in some way deprived Mr. Watson of due process. Nor do we believe that grave injustice would result from this court imposing reciprocal discipline based on the BODA panel decision.

Due Process

Mr. Watson complains that IOLTA bank account records were not offered in evidence by the Commission until the final moments of the hearing, and that he was denied due process because he did not have these documents to prepare for his defense.[4]

---

[4] Texas Disciplinary Rule 1.14(a) states that "[c]omplete records of [client trust or escrow] account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation." Mr. Watson testified that he gave all of his IOLTA account records to his prior law firm.

However, Mr. Watson did not object to the introduction of these records at the hearing.[5]  In fact, when the panel expressed concern with the late production of the records, and stated it did not know if it would consider them in its deliberations, the Commission offered to withdraw the records.  The panel then commented that these records, which verified the existence of the IOLTA account in 1995, tended to favor Mr. Watson, a statement with which Mr. Watson's counsel concurred.[6]

---

[5] A review of the transcript reveals that both Mr. Watson and the Commission reported to the panel that, despite diligent efforts, they had been unable to locate  records or checks for Mr. Watson's IOLTA account prior to the hearing.  Mr. Watson had provided the Commission with a release form for the bank to provide the documents, but the bank had apparently been unable to locate the account information.

At the beginning of the second and final day of the hearing, Mr. Watson's counsel reported to the panel that he had received a package the night before containing checks from Mr. Watson's IOLTA account.  He had told the Commission about the package that night.  Mr. Watson's counsel advised the panel that he did not know who sent him the checks.  The panel allowed Mr. Watson to introduce the checks in evidence over the Commission's objection.

Near the end of the hearing, the Commission offered in evidence Mr. Watson's IOLTA account records for the relevant time period.  Disciplinary counsel for the Commission reported to the panel that he had asked an investigator take to the bank copies of the checks delivered to  Mr. Watson's counsel the night before in an effort to track down the related IOLTA account information, and that he had just received the account records within the previous one to two hours.  Mr. Watson's counsel stated that he did not object to the relevant portions, for which Mr. Watson had provided an authorization.

[6] As noted by Mr. Watson in his brief, disciplinary counsel had implied earlier in the hearing that Mr. Watson did not even maintain an IOLTA account, presumably suggesting that Mr. Watson had handled the Wilson funds without even an attempt to comply with the disciplinary rules.

The unusual circumstances of the delay in locating and offering these documents, the lack of objection to the documents, and Mr. Watson's testimony earlier in the hearing that he had maintained his IOLTA account after the effective date of the Agreed Judgment, used some of the settlement proceeds in the account to pay for family expenses, and then transferred the remaining portion to his personal bank account, satisfy us that the admission of the IOLTA bank account records did not result in a denial of due process.[7]

Mr. Watson further argues that he did not receive notice that he was being accused of mismanagement of "third-party" funds because the charge only included the term "client funds".

The Commission's First Amended Motion to Revoke Probation, Part III, alleged misconduct arising out of Mr. Watson's representation of William Wilson. The Motion alleged that:

> - Mr. Watson maintained settlement funds from the Wilson case in his own client trust account or his own personal bank account in violation of the terms of the Agreed Judgment;
>
> - Mr. Watson delayed distributing those portions of the funds that were the property of other persons;

---

[7]We further note that the records do not appear to have played any role in the BODA deliberations. The panel's Findings of Fact and Conclusions of Law do not make any reference to the exhibit. The findings do state that Mr. Watson testified that he initially deposited the settlement proceeds into his IOLTA trust account number 050-07008121 at Texas Commerce Bank, N.A. in Beaumont, Texas. They also state that during the period of probation, Mr. Watson maintained a legal business banking account in the form of an IOLTA account, referencing the same account number and location. At no time has Mr. Watson denied that he maintained the account.

- $30,000.00 of the funds represented a worker's compensation lien payable to an insurance company; and when Mr. Watson paid the $30,000.00 to the insurance company, it was with funds from his personal account and after a year's delay; and

- Mr. Watson "commingled these client funds with his own funds, or used client funds for his own personal expenses," in violation of the Texas Disciplinary Rules of Professional Conduct and the Agreed Judgment.

BODA's Findings of Fact state that during the term of probation, Mr. Watson retained in an IOLTA account approximately $30,000.00 in settlement funds while trying to negotiate a reduction in a subrogation lien owed by Wilson to an insurance company. BODA found that these funds were either "client funds" or "third-party funds" to be held in trust, and further found that Watson spent some portion of them for "personal" purposes without the permission of either the client or the insurance company.

Mr. Watson received prior notice that he was accused of improperly delaying payment of that portion of the Wilson settlement proceeds belonging to a third-party - the insurance company. Mr. Watson also received prior notice that he was accused of maintaining some portion of the Wilson settlement proceeds, some or all of which belonged to a third party, in his client trust or personal bank account. Although the Commission's motion does refer to commingling of "client funds," it is clear from the wording of the charge that the "funds" being referred to are settlement proceeds including money that belonged to the insurance company. Mr. Watson had sufficient prior notice of the

charges that he mishandled third-party funds to meet the requirements of procedural due process.

Finally, Mr. Watson attacks the Texas attorney disciplinary procedures as lacking in due process because he claims that the disciplinary rules effectively applied a constitutionally impermissible evidentiary standard and failed to afford him meaningful appellate review of the BODA's judgment. He argues that because this court requires clear and convincing evidence of attorney misconduct in federal attorney discipline proceedings, In re Medrano, 956 F.2d 101, 101-02 (5th Cir. 1992), Texas procedures requiring proof of misconduct by only a preponderance of the evidence are constitutionally invalid.[8]

Mr. Watson, in effect, is seeking collateral relief from the BODA decision. This court has no authority to reexamine or reverse the action of a state supreme court in disciplining a member of its bar for professional misconduct. Selling, 243 U.S. at 50.

The argument that proof of misconduct by a preponderance of the evidence denies the attorney due process has been rejected by the Second Circuit in In re Friedman, 51 F.3d 20, 22 (2nd Cir. 1995). That court also noted that the Supreme Court's decision

---

[8] Texas discipline rules provide that charges of misconduct must be proven by a preponderance of evidence. Texas Rules of Disciplinary Procedure, Rule 2.16. Similarly, probation "shall" be revoked upon proof by a preponderance of the evidence of a violation of probation. Id.; Rules 2.20, 3.13.

to impose reciprocal discipline on attorney Friedman based on the same charges underlying the appealed-from district court discipline order was an implicit rejection of his claim that the preponderance of the evidence standard of proof deprived him of due process.  We agree that no due process violation results when a state court finds misconduct by a preponderance of the evidence.

Mr. Watson also argues that the characterization by the Supreme Court of Texas of attorney discipline proceedings as civil in nature (citing Commission for Lawyer Discipline v. Benton, 980 S.W.2d 425, 438 (Tex. 1998), cert. denied, 119 S.Ct. 2021 (1999)) is in direct conflict with United States Supreme Court and Fifth Circuit cases characterizing such proceedings as quasi-criminal.  See, e.g., In re Ruffalo, 390 U.S. 544, 550-51 (1968); In re Sealed Appellant, 194 F.3d 666, 670 (5th Cir. 1999).  He claims that the quasi-criminal characterization necessitates a more rigorous showing than the civil preponderance of the evidence standard.

In In re Ruffalo, the Supreme Court granted certiorari on a Sixth Circuit decision to impose reciprocal discipline on an attorney who had been suspended indefinitely by the Supreme Court of Ohio.  The Supreme Court described discipline proceedings as quasi-criminal in a discussion of what prior notice and opportunity to be heard must be afforded  an attorney charged with misconduct.  In re Ruffalo did not address the burden of

proof to be applied in a disciplinary proceeding.  390 U.S. at 550.[9]

The Fifth Circuit cases cited by Mr. Watson for the proposition that federal discipline orders must be supported by clear and convincing evidence of misconduct involved appeals of discipline imposed by federal district courts and did not address the burden of proof to be applied in a state proceeding.  Mr. Watson arguments regarding an insufficient standard of proof are unavailing.

Sufficiency of Evidence

Mr. Watson also claims that there is no evidence that he mishandled "client funds."  The BODA found that Watson received $60,000.00 in settlement proceeds in the Wilson case, that Watson had no fee interest in or other claim against this money, that he initially deposited the money into his IOLTA account, that he paid $20,000.00 to Wilson and retained approximately $30,000.00 while trying to negotiate a reduction in a subrogation lien owed by Wilson to an insurance company, that he spent some portion of the retained $30,000.00 for "personal" purposes without permission from either Wilson or the insurance company, and that he deposited some portion of the retained $30,000.00 into his own

---

[9] In the federal criminal context, we note that conduct which violates the terms of a supervised release, and thus supports revocation, need only be found under a preponderance of evidence standard.  Johnson v. United States, 120 S.Ct. 1795, 1800 (2000).

personal bank account without permission from either Wilson or the insurance company.

Mr. Watson states in his brief that after disbursing the first $30,000.00, "Watson attempted to negotiate further with Transportation so that Wilson, who was in dire financial straits, could receive some part of [the remaining] $30,000.00." Thus, Mr. Watson acknowledges that some portion of the funds in question potentially belonged to his client. Texas Disciplinary Rule 1.14 (a) specifically states that a lawyer shall hold funds belonging in whole or part to clients or third persons separate from the lawyer's own property.

Mr. Watson testified at the state court hearing that he used a substantial portion of the Wilson settlement funds in his IOLTA account to pay family expenses. He also testified that remaining monies were transferred to his personal account. He further testified that he eventually paid the $30,000 to the Transportation Insurance Company from personal funds. He presents no evidence that either Wilson or the insurance company consented to his use of the settlement proceeds for personal expenses or to the transfer of the money to his personal bank account. Mr. Watson's argument that the insurance company's ultimate satisfaction with the eventual receipt of money it was owed should be interpreted as "retroactive consent" is unpersuasive. The record contains more than sufficient evidence to support the BODA's finding of misconduct.

<u>Grave Injustice</u>

Mr. Watson further argues that grave injustice would result from this court's imposition of reciprocal discipline because the terms of the probation order were ambiguous, the misconduct complaint was the result of a personal vendetta against Mr. Watson by his prior law firm, and suspension is too severe a punishment for the alleged misconduct.

Mr. Watson complains that the terms of the Agreed Judgment were ambiguous because although condition six prohibited him from maintaining a legal business banking account, including an IOLTA account, condition five advised that he was obligated to comply with the Bar's rules regarding IOLTA accounts.[10]

That Mr. Watson truly believed that he could still maintain an IOLTA account, in spite of the Agreed Judgment's specific requirements that he not keep a legal business  banking account or  have access to client funds, is farfetched.[11]  When Mr. Watson agreed to the terms of the Judgment probating his original

---

[10] Conditions five and six read:

5.  Respondent shall comply with Interest on Lawyers Trust Account requirements in accordance with Article XI of the STATE BAR RULES;
6.  Respondent shall not have a legal business banking account, for instance, but not limited to, IOLTA, client trust account, etc.;

[11] Mr. Watson's response makes it clear that he knew that, pursuant to the Agreed Judgment, he could not <u>open</u> a legal business account.  It is difficult to avoid the conclusion that he knew he could not <u>have</u> a legal business account.  The wording of the Agreed Judgment gives no support to such a distinction.

suspension, presumably he knew he had settlement funds in his IOLTA account.  The record does not reflect whether the Commission knew about the funds, but it behooved Mr. Watson to clarify how these funds should be handled before he agreed to the Judgment.  Had he asked, it is reasonable to expect that the Commission would have given him a grace period or instructed him to have the funds transferred out of his account to an account under the control of some other appropriately responsible person.[12]  Any confusion genuinely resulting from the Agreed Judgment could easily have been clarified.  Imposing reciprocal discipline on an attorney who claims to have acted on the unverified assumption that the order allowed what one condition of it plainly forbade would  not appear to present the "grave injustice" contemplated by the Supreme Court in <u>Selling</u>.

In his responses to the show cause order, Mr. Watson does not dispute that during the term of probation he spent some portion of the $30,000.00 settlement proceeds for personal purposes, and deposited some portion of the $30,000.00 into his personal bank account.  He claims he was "whipsawed" because BODA would have determined that he violated the Agreed Judgment regardless of what he did with the funds.  He asserts that he moved the funds into his personal account when it became clear

---

[12] Condition nine of the Agreed Judgment stated that Watson was allowed to practice law only under the direct supervision of a licensed attorney in good standing with the State Bar in the same office or suite of offices.

that there was no possibility that the funds would become "client funds" (and, he says, therefore could not be kept in an IOLTA account) and when the Agreed Judgment prohibited him from opening a business account.

In the light of Mr. Watson's comments about his efforts to reduce the lien to free up some more money for Wilson, at a minimum Mr. Watson knew that some of the funds might potentially belong to his client. In any event, Disciplinary Rule 1.14's requirements regarding the safekeeping of property apply to client and third-party funds alike. Nothing in Watson's response indicates a change in circumstances that would relieve him of the obligation to safeguard settlement funds and keep them separate from his own personal funds.

Mr. Watson complains that the probation revocation proceeding should have been dismissed because the Commission allegedly pursued this matter at the behest of attorneys who purportedly stood to gain an advantage in a civil matter by Mr. Watson's suspension and who wanted to destroy Mr. Watson's credibility. Mr. Watson wanted to take depositions and issue document requests to establish the improper motive and bias of these attorneys, who testified against him at the revocation proceeding. Mr. Watson complains that BODA's denial of his requests to conduct discovery prevented him from developing evidence critical to his defense.

Though a disciplinary prosecution based on personal motives of members of the Commission's staff might be improper, Mr. Watson does not suggest any improper motivation by the Commission in its investigation or prosecution of the charges. Nor does he cite any authority suggesting that a disciplinary order, if supported by the evidence, should nonetheless be deemed invalid because the complaining parties might benefit from the imposition of discipline on the accused.

Mr. Watson does not suggest in his responses to the show cause order that these witnesses testified falsely at the hearing. He does accuse them of concealing or destroying documents and testifying falsely in their depositions. But Mr. Watson neither identifies the documents nor describes their contents. He does not explain how these witnesses allegedly provided false deposition testimony, or identify how the alleged false testimony had any effect on the BODA's findings with regard to the Wilson settlement funds. These complaints do not suggest that grave injustice would result from imposing reciprocal discipline based upon the Texas suspension order.

Mr. Watson claims that the suspension is too severe a penalty because no one lost any money and he did not collect a fee for his work on the Wilson case. This argument misses the point. The fact that his mismanagement of funds did not result in financial loss does not convert serious misconduct into a

trivial matter or diminish the need to protect the public.[13] The court notes that according to the Agreed Findings of Fact and Conclusions of Law issued in conjunction with the Agreed Judgment, it was mismanagement of client funds that resulted in Mr. Watson's original suspension and probation in the first place.

After reviewing the record of the state proceeding and briefs filed by Mr. Watson in this matter, and thoroughly considering his arguments at the hearing, we do not find any of the types of infirmities identified in Selling case that would militate against the imposition of reciprocal discipline.

Alto V. Watson, III is accordingly suspended from practice before this court for five years effective September 2, 1999, the date of the BODA judgment. At any time after the expiration of his suspension, Mr. Watson may apply to the Chief Judge of this court for readmission to practice. He should present at that time satisfactory evidence of his status as a member in good standing of the State Bar of Texas.

---

[13] This court does not gain much comfort from Mr. Watson's testimony at the state proceeding that money management has been a problem for him and if he ever has his own law practice, he will have to have someone else oversee the management of his client funds.