[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11586
Non-Argument Calendar
_____

D.C. Docket No. 2:13-mc-03643-WKW-CSC

In re: GATEWOOD WALDEN, Ex Parte,

Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(October 4, 2017)

Before TJOFLAT, HULL, and WILSON, Circuit Judges.

PER CURIAM:

Gatewood Walden, an attorney proceeding *pro se*, appeals the District

Court's order disbarring him from practicing law in the United States District

Court for the Middle District of Alabama, Northern Division. On appeal, Walden

argues that the District Court abused its discretion by failing to find any *Selling v.*

*Radford* infirmities during its intrinsic inquiry into the Alabama disciplinary proceedings.  243 U.S. 46, 51 (1917).

We review district court disbarment orders for an abuse of discretion.  *In re Calvo*, 88 F.3d 962, 967 (11th Cir. 1996).  There is an abuse of discretion if the district court does not apply the correct legal standard or fails to follow proper procedures.  *Johnson v. Breeden*, 280 F.3d 1308, 1326 (11th Cir. 2002) (quotation omitted).

While state court decisions receive high respect, federal disbarment does not automatically result from state disbarment.  *Theard v. United States*, 354 U.S. 278, 282 (1957).  The attorney disbarred in state court must show good cause why the district court should not also disbar him or her.  *Calvo*, 88 F.3d at 967.  A state court disbarment should receive federal effect unless an "intrinsic consideration" of the state record reveals at least one of the following conditions: (1) inadequate due process from insufficient notice or an inadequate opportunity to be heard,[1] (2) the "infirmity of proof" in the state proceeding gives rise to a "clear conviction" that the district court could not, consistently with its duty, accept the final conclusion, or (3) "some other grave reason existed which should convince [the district court] that to allow the natural consequences of the judgment to have their effect would conflict with the duty which rests upon [the district court] not to

---

[1] This *Selling* consideration narrowly defines due process as either a lack of notice or an inadequate opportunity to be heard.  *See Calvo*, 88 F.3d at 967.

2

disbar except upon the conviction that, under the principles of right and justice, [it was] constrained to do so." *Selling*, 243 U.S. at 51. If the district court finds any of these three considerations present, then the state disbarment should not lead to federal disbarment.

District courts need not conduct a *de novo* trial over the attorney's fitness to practice law. *Calvo*, 88 F.3d at 967. However, they must determine whether the record supporting the state disbarment reveals the infirmities identified in *Selling*. But where a district court admits lawyers based on their state bar membership, the district court may suspend the lawyer based on the state suspension—so long as an intrinsic investigation does not uncover a *Selling* infirmity. *Greer's Refuse Serv., Inc. v. Browning-Ferris Indus. of Del.*, 843 F.2d 443, 446–47 (11th Cir. 1988).

In this case, the disbarment arose from violations of three Alabama Rules of Professional Conduct: Rules 3.1(a), 8.4(a), 8.4(d). Under Rule 3.1(a), lawyers must "not file a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of [his or her] client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another." Rule 8.4(a) states that lawyers commit professional misconduct by violating or attempting to violate the Rules of Professional Conduct, or by knowingly assisting or inducing another to do so, or doing so through the acts of another. Lastly, Rule

3

8.4(d) prohibits lawyers from engaging in conduct that prejudices the administration of justice. Ala. R. Prof. C. 8.4(d).

Here, the District Court did not abuse its discretion in disbarring Walden. As an initial matter, Walden was not entitled to a *de novo* trial on his fitness to practice law. *Calvo*, 88 F.3d at 967. Since Walden's membership in the Middle District of Alabama Bar relied on his membership in the Alabama Bar, the District Court could disbar him because of his state disbarment, so long as no *Selling* infirmities were present in the Alabama proceedings. *See Greer's*, 843 F.2d at 447. This means that the District Court only needed to examine the Alabama proceedings for *Selling* infirmities. It did this.

The District Court did not abuse its discretion in determining that no *Selling* infirmities existed. Under the first *Selling* prong, due process only includes notice and the opportunity to be heard. *Calvo*, 88 F.3d at 967. Walden received notice of the disciplinary action through the summons and formal charges, which included references to specific rules and the specific conduct that led to the charges. Walden also claimed that the Disciplinary Board violated his due process rights by initially stating his suspension would last six months, and then disbarring him. This claim fails because Walden was allowed to raise this argument before the Alabama Supreme Court on appeal.[2] The State Bar also requested disbarment at

---

[2] The Alabama Supreme Court ultimately affirmed his disbarment.

4

the disciplinary hearing.  Thus, even though the Disciplinary Board altered its punishment, Walden had notice of possible disbarment and the opportunity to argue against it.

Second, the State Bar sufficiently proved that Walden violated three Alabama Rules of Professional Conduct.  For Rule 3.1(a), the State Bar presented evidence that: (1) Walden was repeatedly sanctioned by the Autauga court and the Alabama Supreme Court for raising meritless claims; (2) the Alabama Supreme Court upheld the authority of the Autauga court to enjoin Willadean Walden and Crooked Creek from filing further suits aimed at establishing their ownership of the apartments; and (3) the federal district court and this Court determined that the ownership of the apartments was resolved.  This suffices to show that Walden's continued filings served to harass or maliciously injure the other parties.  *See* Ala. R. Prof. C. 3.1(a).  For Rule 8.4(a), Walden admitted that he assisted another lawyer in preparing a claim regarding the apartments, even though the Autauga court found him in contempt and the Alabama Supreme Court definitively resolved any claims about the apartments. This shows that Walden knowingly assisted another lawyer in violating the Rules of Professional Conduct.  As to Rule 8.4(d), Walden admitted both that he advised his mother and that she could enter the apartment property, in violation of the Autauga court's order, and that the Autauga

5

court held in contempt of court for doing so.  This establishes that he engaged in conduct that prejudiced the administration of justice.  *See* Ala. R. Prof. C. 8.4(d).

Finally, Walden has not proffered a grave reason why state disbarment should not lead to federal disbarment.  Walden first claims that his continued lawsuits over ownership of the apartments were meritorious.  However, the procedural history undermines this argument.  It shows that both the Alabama Supreme Court and the federal courts rejected Walden's ownership claims several times.  Indeed, as the District Court noted, Walden's disbarment resulted from his inability to accept court orders adverse to his mother's property interest in the apartments.

Walden also argues that disbarment was disproportionate to his offenses.  However, in support of this, Walden only offers a previously clean record.  His actions in the present dispute warrant disbarment despite his previous record.  He intentionally disobeyed court orders, which resulted in contempt, and harassed other parties and lawyers for other a decade, despite adverse decisions in both federal and state court.

Therefore, because the state court record does not contain any *Selling* infirmities, this Court affirms the District Court order disbarring Walden.

**AFFIRMED.**

6